UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:21-CV-382-BO

| | |
|---|---|
| CONNIE R. MITCHELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | ORDER |
| ) | |
| ATI INDUSTRIAL AUTOMATION, INC, ) | |
| ) | |
| Defendant. ) | |

This case comes before the Court on defendant's motion [DE 32] for summary judgment. Plaintiff has responded, and in this posture, the matter is ripe for adjudication.

## BACKGROUND

Connie Mitchell is a forty-one-year-old black woman who worked as a mechanical assembler at ATI Industrial Automation. On August 6, 2020, ATI posted an opening for a calibration technician, a specialized position requiring electromechanical troubleshooting. A calibration technician earned more than a mechanical assembler, so Mitchell applied. The only other applicant was Mark Sinning, a thirty-two-year-old white man who worked in ATI's shipping division. Unlike Mitchell, Sinning was a college graduate. Both Mitchell and Sinning were interviewed on August 19, 2020.

Mitchell had a decent interview. Her demeanor was reserved, so the interview panel could not gauge her enthusiasm for the position. The panel credited Mitchell's electromechanical assembly experience but noted a calibration technician required electromechanical *troubleshooting*, not assembly. Electromechanical troubleshooting involves notating large amounts of technical information. With that in mind, the panel asked Mitchell about her note-

taking skills. Mitchell replied that she had a good memory. The panel took her answer to mean that Mitchell did not have strong note-taking skills.

Mark Sinning, on the other hand, had a fantastic interview. He struck the panel as energetic and eager. Unlike Mitchell, Sinning had a four-year college degree. Joe Feltenberger (the head of the calibration lab and the leader of the interview panel) considered that degree a mark of Sinning's persistence, which would make him a good calibration technician. When Sinning was asked about his note-taking skills, he assured the panel that he had developed strong note-taking skills during college. Although Sinning's experience in shipping was less applicable than Mitchell's, the panel noted that he excelled in shipping because of his leadership and thought it would serve him well as a calibration technician.

After deliberation, the panel decided to offer the job to Sinning. However, they were so impressed with Mitchell that Feltenberger emailed his boss (John Snead) and proposed that ATI hire both applicants. Snead was receptive to the idea. He said he would seek authorization to hire Mitchell and instructed Feltenberger to tell Mitchell that ATI intended to hire her as a calibration technician.

On August 31, 2020, Feltenberger followed Snead's instructions. He told Mitchell that ATI had chosen to hire Sinning but that ATI was creating a second calibration technician position specifically for her. Feltenberger told Mitchell that – when it was authorized – this second position would be hers. It would not be posted internally, and she would not have to reapply. Feltenberger proposed that Mitchell start training in the calibration lab and offered to meet with Mitchell every week to ease the transition. Mitchell asked if she would be paid for her training, and Feltenberger replied that he did not know. Mitchell assumed the training would be unpaid.

On September 2, 2020, Mitchell emailed Heather Heal (ATI's Human Resources Generalist) and complained that ATI's hiring process was tainted with discrimination. She also claimed it was unfair to force her to perform unpaid training. Heal promptly investigated Mitchell's claims. After interviewing Feltenberger and Snead, Heal concluded that discrimination was not a factor in the hiring decision.

The next day, September 3, 2020, Snead assured Mitchell she would be paid for the training. Snead explained that her training would actually pay more than her regular work on the mechanical assembly line. Snead repeated that ATI was creating this second position specifically for her. Once it was authorized, Mitchell would be offered the job immediately.

On September 15, 2020, Snead received final approval for the second calibration technician position. Feltenberger and Mitchell were scheduled to meet the next day, so Snead told Feltenberger to formally offer Mitchell the position during that meeting. However, on the morning of September 16, Mitchell canceled the meeting because she was "not comfortable" meeting with Feltenberger every week. The meeting did not occur.

The next day, September 17, Beal met with Mitchell. Beal repeated that Mitchell would be paid for the training and explained that she could apply for other ATI positions while she was training. Beal presented Mitchell with the written offer letter.

Mitchell rejected the job offer.

A week later, plaintiff's anxiety and depression allegedly worsened, and she went out on FMLA-protected leave for about a month. And a month after returning, she voluntarily resigned from ATI.

On September 22, 2021, plaintiff filed this complaint, alleging violations of the Age Discrimination in Employment Act (ADEA) and Title VII of the Civil Rights Act of 1964. Connie

3

Mitchell alleges that ATI's failure to promote her was due to discrimination based on her race, sex, and age. She also claims that ATI's failure to promote her was retaliation for complaining about ATI's alleged discrimination. It is before the Court now on defendant's motion for summary judgment.

## DISCUSSION

Summary judgment is proper only when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact entitling movant to judgment as a matter of law. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). An issue is "genuine" if a reasonable jury, based on the evidence, could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

This order is divided into three sections: (1) the Title VII race and sex discrimination claims, (2) the Title VII retaliation claims, and (3) the ADEA age discrimination claims.

I. Title VII race and sex discrimination claims

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's

4

race." 42 U.S.C. § 2000e-2(a). "Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). Mitchell's briefing addresses only the pretext avenue, so this Court will apply the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

First, plaintiff must establish a prima facie case of discrimination. Then, the burden shifts to defendant to show a nondiscriminatory basis for the adverse employment decision. Finally, "the burden then shifts back to the plaintiff to prove . . . that the stated reason for the adverse employment action is a pretext and the true reason is discriminatory." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016).

In order to make a prima facie claim of Title VII discrimination for ATI's alleged "failure to promote," Mitchell must show that: "(1) [she] is a member of a protected group, (2) there was a specific position for which [she] applied, (3) [she] was qualified for that position, and (4) [ATI] rejected [her] application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). *McCaskey v. Henry*, No. 3:10-CV-390-GCM, 2012 WL 1118851 (W.D.N.C. Apr. 3, 2012).

Mitchell cannot meet the fourth prong. Her application was not rejected, it was delayed. On August 31, 2020, Mitchell learned that Sinning had been offered the position. That same day, ATI told Mitchell about their plan to create a second calibration technician specifically for her. ATI assured her she would not have to reapply – the position was hers. Mitchell began training, but when ATI formally offered Mitchell the position, she rejected it.

Even if this Court were to find that Mitchell established a prima facie case for discrimination, ATI successfully articulated its nondiscriminatory reasons for initially promoting

5

Sinning over Mitchell. *See Carter v. Ball*, 33 F.3d 450 (4th Cir. 1994). Simply put, Sinning had a better interview than Mitchell. Feltenberger believed Sinning's college degree showed commitment and initiative. The panel considered note-taking and electromechanical troubleshooting positively correlated, so they were impressed with Sinning's strong note-taking skills. Despite Mitchell's belief, neither candidate's experience would guarantee success as a calibration technician. The panel saw Sinning as a leader who could become a good calibration technician.

Mitchell cannot demonstrate those reasons were a pretext for discrimination. She submits several declarations from former ATI employees that contain vague opinions of ATI's racism. The issue here is whether discrimination tainted ATI's decision to hire Sinning over Mitchell. The authors of the declarations were not involved in that decision, so their opinions are of little probative value.

It is particularly difficult to infer discrimination when Mitchell's promotion was in the works before she complained of discrimination. Mitchell claims ATI only offered her the job to guard against this incoming lawsuit. But ATI began the process of creating that second position on August 31, 2018, days before Mitchell complained of discrimination. Even drawing all inferences in her favor, a reasonable fact finder could not find a preponderance of the evidence that ATI's explanation for selecting Sinning was a pretext to mask discrimination based on Mitchell's sex or race.

II.   Title VII retaliation claim.

To establish a Title VII retaliation claim, plaintiff must show that (1) she engaged in protected activity, (2) her employer took an adverse employment action against her, and (3) there is a causal relationship between his protected activity and the adverse action. *Foster v. Univ. of*

*Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Mitchell claims that she suffered an adverse employment action when ATI did not immediately promote her as a calibration technician and forced her to have weekly meetings with Feltenberger. Neither the delayed promotion nor her meetings with Feltenberger constitute an adverse employment action.

### A. Delayed promotion

Mitchell was not denied a promotion; she was denied an *immediate* promotion. Seventeen days after offering it to Sinning, ATI formally offered her the position of calibration technician, but Mitchell rejected it. To be sure, under different circumstances, a delayed promotion could constitute an adverse employment action. But here, the seventeen-day delay cannot sustain a Title VII retaliation claim.

### B. Weekly meetings with Feltenberger

Similarly, the weekly meetings with Feltenberger were not an "adverse employment action" because they were intended to train Mitchell for her promotion. Indeed, ATI paid Mitchell more than her normal rate for the meetings. If those meetings were adverse, Mitchell would have faced some consequences for canceling the September 16 meeting. But Mitchell faced no consequences. In fact, the next day, Mitchell was formally offered the promotion.

Therefore, neither the delayed promotion nor the weekly meetings with Feltenberger constituted an adverse employment action. Without an adverse employment action, her Title VII retaliation claim must be dismissed.

### C. No causal relationship

Even if Mitchell suffered an adverse employment action, her retaliation claim would fail because there is no causal relationship between the protected act and the alleged retaliatory act. The protected act occurred on September 2, when Mitchell complained to Heal that ATI's hiring

process was discriminatory. The alleged retaliatory act occurred on August 31, when the panel decided to hire Sinning over Mitchell. The decision to promote Sinning could not have been retaliation for Mitchell's complaint because ATI made that decision two days *before* she filed the complaint. And there is no evidence to suggest a causal relationship between the meetings with Feltenberger and Mitchell's complaint.

III. ADEA

Unlike the two previous Title VII claims, the ADEA requires that Mitchell prove age was the "but-for" cause of the employer's adverse decision. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). ATI argues that there is no evidence that age was a "but-for" cause in the allegedly adverse action decision. Plaintiff has failed to respond to that argument. "[W]here a plaintiff fails to respond to a defendant's arguments regarding a discrimination claim, the plaintiff waives the claim." *Pledger v. Mayview Convalescent Home, Inc.*, No. 5:07-CV-235-F, 2009 WL 1010428, at *17 (E.D.N.C. Apr. 14, 2009). Thus, Mitchell has waived her ADEA claim, and it will be dismissed.

## CONCLUSION

For the foregoing reasons, defendant's motion [DE 32] for summary judgment is GRANTED. The Clerk is DIRECTED to enter judgment and close the case.

SO ORDERED, this __12__ day of July 2023.

Terrence W. Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE